UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LARRY HAUSLER, | ) |
| | ) |
|        Plaintiff, | ) |
| v. | )    No. 09-CV-483-TCK-TLW |
| | ) |
| H. MAX FELTON, | ) |
| | ) |
|        Defendant. | ) |

**OPINION AND ORDER**

Before the Court is Defendant's Motion to Dismiss Based on Claim Preclusion ("Motion") (Doc. 7).

**I.     Background**

The following facts are alleged in Plaintiff's Complaint. In 1986, Plaintiff Larry H. Hausler ("Plaintiff") and Michael D. Hudson ("Hudson") purchased real property in Sand Springs, Oklahoma upon which a Burger King restaurant would be located. Plaintiff and Hudson leased that property to HMF Enterprises ("HMF") ("lease"). Later in 1986, Plaintiff and Hudson sold the real property upon which the Burger King restaurant was located to Jerome Feldman ("Feldman") and assigned to Feldman the lease of the property. In connection with the assignment of the lease, Plaintiff and Hudson guaranteed the lease payments to be made by HMF to Feldman. Feldman subsequently assigned the lease to Networks XIX.

In 1998, Plaintiff sold his stock in HMF and his rights under a Burger King Franchise Agreement to Defendant. As a condition of that sale, Defendant agreed to assume certain liabilities. Specifically, the contract between Plaintiff and Defendant provides the following:

1

> 3. Assumption by Buyer of all accounts payable that directly relate to Burger King #5110 and Burger King #527, Buyer specifically agreeing to hold Seller harmless therefrom for any loss or damage, including costs or attorney's fees, Seller might incur as a result thereof. Further, Buyer agrees to satisfy the foregoing accounts payable in the timely manner as same become due and payable.

(Pl.'s Compl. 2.) In 2004, HMF defaulted on its lease with Networks XIX, and Networks XIX made demand on Plaintiff and Hudson for payments pursuant to the guaranty that accompanied the assignment of the lease. According to Plaintiff, Defendant "refused to fulfill those obligations, thus breaching his contract with Plaintiff" and forcing Plaintiff to pay certain funds to third parties. (*Id.*) In May 2005, Plaintiff filed suit against Defendant in this Court for breach of contract to recover the amounts paid to third parties, claiming he was entitled to indemnification from Defendant ("05-CV-289"). (*See* 05-CV-289, Doc. 2, Pl.'s Compl. 3.)

Trial commenced on October 25, 2006, and on October 26, 2006, the jury returned a verdict for Plaintiff, awarding him actual damages in the amount of $181,523.90. Defendant subsequently moved for a new trial, maintaining that the jury's verdict was against the weight of the evidence. The Court granted Defendant's motion, and a second trial began on March 25, 2008. On March 26, 2008, a verdict was again returned for Plaintiff in the amount of $181,523.90. Defendant again sought a new trial, but the Court denied Defendant's request and entered judgment in favor of Plaintiff in the amount of $181,523.90.

On April 20, 2007, while 05-CV-289 was proceeding before this Court, Networks XIX filed suit against Plaintiff in the Circuit Court of Manatee County, Florida, to recover certain additional payments under the terms of the lease for repairs and maintenance of the relevant property. Plaintiff alleges that he demanded payment from Defendant for such amounts, but that Defendant refused, "again breaching his contract with [Plaintiff]." (Pl.'s Compl. 3.) Plaintiff now claims that he is

entitled to indemnification from Defendant for those additional funds. Defendant moves to dismiss Plaintiff's newest breach of contract claim, alleging that it is barred pursuant to the doctrine of claim preclusion.

## II.     Legal Standard

Defendant moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").[1] In considering a motion to dismiss under Rule 12(b)(6), the Court "assume[s] the truth of the plaintiff's well-pleaded factual allegations and view[s] them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 550 U.S. at 570). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.

---

[1] Defendant fails to explicitly cite Rule 12(b)(6) in his Motion. However, the Court will construe Defendant's Motion as made pursuant to Rule 12(b)(6) because: (1) the discussion in Defendant's reply brief regarding possible conversion of Defendant's Motion to a motion for summary judgment suggests that the Motion is made pursuant to Rule 12(b)(6); and (2) Rule 12(b)(6) is commonly used as the vehicle for arguing claim preclusion, *see, e.g., Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1199 (10th Cir. 2002) (noting defendant moved to dismiss under Rule 12(b)(6), arguing *inter alia*, that plaintiff's claim was barred by the doctrine of res judicata).

Plaintiff argues that Defendant's Motion should be converted to one for summary judgment. *See Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253 (10th Cir. 2005) ("Generally, a court must convert a motion to dismiss into a motion for summary judgment when matters outside the pleadings are relied upon."). Specifically, Plaintiff contends that "in order to prevail on his theory of claim preclusion . . . [Defendant] must be able to demonstrate that the claim asserted in [Plaintiff's] Complaint is one which should have been raised in previous litigation between the parties," necessitating an inquiry into "facts" that are outside the Complaint. (Pl.'s Resp. to Def.'s Mot. to Dismiss 2.)

The Court finds it unnecessary to convert Defendant's Motion into one for summary judgment. Although reference to pleadings and orders in 05-CV-289 is necessary, consideration of such matters does not require conversion. *See Arthur Anderson, LLP v. Fed. Ins. Co.*, No 06-C-1824, 2007 WL 844632, at *7 (N.D. Ill. March 16, 2007) ("[A] court ruling on a motion to dismiss may take judicial notice of matters in the public record, including pleadings and orders in previous cases, without converting a Rule 12(b)(6) motion into a motion for summary judgment.") (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) and *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)); *see Team Enter., LLS v. W. Inv. Real Estate Trust*, No. CV-F-08-0872, 2008 WL 4826132, at *2 (E.D. Cal. Nov. 6, 2008) (noting that, on a motion to dismiss, a court may properly "take judicial notice of facts outside the pleadings" and "look beyond the complaint to matters of public record" without having to convert the motion to one for summary judgment) (determining claim preclusion argument on motion to dismiss).

**III.     Applicable Law**

The parties dispute the law applicable to Defendant's Motion. Specifically, Defendant contends that federal law governs the question of claim preclusion in this case, while Plaintiff asserts that the Court should instead rely on Oklahoma law. Central to this dispute is a reading of *Petromanagement Corporation v. Acme-Thomas Joint Venture*, 835 F.2d 1329 (10th Cir. 1988), and *Semtek International Incorporated v. Lockheed Martin Corporation*, 531 U.S. 497 (2001).

In *Petromanagement*, the plaintiff Petromanagement entered into an oil and gas exploration agreement by which it agreed to purchase certain oil and gas leases from Acme Development, Inc. Five wells were drilled pursuant to this agreement, with separate contracts signed for each well. On May 17, 1984, Petromanagement brought its first action (*Petro I*), alleging breach of the oil and gas exploration agreement and seeking recision and restitution. Shortly before *Petro I* was scheduled to go to trial, Petromanagement filed another action (*Petro II*) for breach of contract against the same parties in the same court. Petromanagement moved to consolidate the two actions, which was denied by the district court. Petromanagement opted to dismiss *Petro I* with prejudice, and the defendants thereafter moved to dismiss *Petro II* based on claim preclusion. The district court applied federal law and granted the motion to dismiss.

On appeal, Petromanagement argued that Oklahoma law, rather than federal law, should govern the issue of claim preclusion under the doctrine of *Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938). The Tenth Circuit relied on Section 87 of the Restatement (Second) of Judgments and held that federal law governs the application of res judicata where the issue is not clearly substantive. *Petromanagement*, 835 F.2d at 1333. The court found that the "decision whether allegations of separate contract breaches must be tried in one action [was] not distinctly substantive

[because] this issue [was] analogous to the federal procedural rule mandating that certain counterclaims be added in a single action." *Id.* The court therefore affirmed the district court's choice of federal law.

Subsequent to *Petromanagement,* the Supreme Court decided *Semtek*. In *Semtek*, the plaintiff's original suit was dismissed in California district court because it failed to comply with California's two-year statute of limitations. Plaintiff then filed suit in Maryland state court, which dismissed the suit based on res judicata. Like the Tenth Circuit in *Petromanagement*, the Supreme Court held that the claim-preclusive effect of a federal diversity judgment was a question of federal law. The Court went further, however, and stated that the best federal rule for the claim-preclusive effect of a federal diversity judgment was to adopt "the law that would be applied by state courts in the State in which the federal diversity court sits." *Semtek*, 531 U.S. at 508. The Supreme Court therefore directed the Maryland state court to apply California claim preclusion law to determine the res judicata effect of the California federal district court decision. *See id.* at 509.

Plaintiff cites *Semtek* in support of the application of Oklahoma law in this case, contending *Petromanagement* pre-dated *Semtek* and should therefore not be followed. Defendant, however, argues that *Semtek*'s holding is limited to "very specific cases involving underlying state substantive law in the form of statutes of limitation." (Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss 3.) Defendant urges the Court to read *Semtek* narrowly and apply federal law to the issue of successive allegations of breach of contract, as was done in *Petromanagement*.

In determining the fate of *Petromanagement* following *Semtek*, the Court looks to the Tenth Circuit's citation of both of these cases in *Hartsel Springs Ranch of Colorado v. Bluegreen Corporation*, 296 F.3d 982, 986 (10th Cir. 2002). Specifically, the Tenth Circuit stated as follows:

6

> Within the res judicata framework, this court applies federal law to determine the effect of a previous federal judgment, even if that judgment was issued in a case based on diversity jurisdiction. *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1332-33 (10th Cir. 1988) (citing Restatement (Second) of Judgments § 87 (1982)).  However, "the best federal rule for the claim-preclusive effect of a federal diversity judgment is to adopt 'the law that would be applied by state courts in the State in which the federal diversity court sits.'" *Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1208 (10th Cir. 2001) (quoting *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 121 S.Ct. 1021, 1028, 149 L.Ed.2d 32 (2001)).

*Hartsel*, 296 F.3d at 986.  Thus, according to *Hartsel*: (1) *Petromanagement* stands for the proposition that federal law determines the effect of a previous judgment in a case based on diversity jurisdiction; and (2) *Semtek* clarified that the best "federal rule" in such a circumstance is to apply the law of the state in which the federal court sits.  *See id.*  Given this statement by the Tenth Circuit, and in the absence of any case law supporting the narrow construction of *Semtek* advocated by Defendant, the Court applies Oklahoma law in determining the claim preclusive effect of the judgment entered in 05-CV-289.

**IV.   Discussion**

Under Oklahoma law, claim preclusion "bars a party from litigating issues that were or could have been litigated in an earlier action between the same parties." *Cockings v. Austin*, 898 P.2d 136, 140 (Okla. 1995).  The elements of claim preclusion are: (1) identity of subject matter and the parties or their privies in the prior litigation; (2) a court of competent jurisdiction heard the prior litigation; and (3) the judgment rendered in the prior litigation must have been a judgment on the merits of the case and not upon purely technical grounds.  *Robinson v. Texhoma Limestone, Inc.*, 100 P.3d 673, 677 n.11 (Okla. 2004).  Plaintiff argues that claim preclusion does not bar the instant action because the claim at issue could not have been litigated in 05-CV-289, as it had not yet accrued.

"An action to enforce indemnity from liability accrues when the event for which indemnity is due occurs, while a cause of action for indemnity from loss does not arise until the loss is paid." *Travelers Ins. Co. v. L.V. French Truck Serv., Inc.*, 770 P.2d 551, 555 (Okla. 1988); *see* Okla. Stat. tit. 15, § 427(1) & (2). Therefore, in order to assess when Plaintiff's claim accrued, the Court must determine whether Plaintiff's claim is based on indemnity against loss or indemnity against liability. Determination of this issue is controlled by the intent of the parties as expressed by the language of the contract. *See Nelson v. ITT Hartford Fire Ins. Co.,* No. 99-6275, 2000 WL 763772, at *2 n.2 (10th Cir. June 13, 2000) (applying Oklahoma law).

As noted above, the contract between Plaintiff and Defendant provides:

3. Assumption by Buyer of all accounts payable that directly relate to Burger King #5110 and Burger King #527, Buyer specifically agreeing to hold Seller harmless therefrom for any loss or damage, including costs or attorney's fees, Seller might incur as a result thereof. Further, Buyer agrees to satisfy the foregoing accounts payable in the timely manner as same become due and payable.

(Pl.'s Compl. 2.) Based on this language, Defendant agreed to assume all accounts payable, satisfy such accounts as they became due, and further agreed to hold Plaintiff harmless from any loss or damage resulting therefrom. The Court finds that this language evidences indemnity from liability, as opposed to indemnity from loss, as it binds Defendant to "stand in the place [of Plaintiff] in the performance of some act" — namely, the payment of certain "accounts payable." *Kaklamanos v. Allstate Ins. Co.*, 796 So.2d 555, 561 (Fla. Dist. Ct. App. 2001) (stating that indemnity against liability "may be defined as an undertaking of the indemnitor to stand in the place of the indemnitee in the performance of some act, as in the payment of a debt due to a third person"); *see Jackson v. Quantrex Integrated Tech. Group*, No. CL01-169, 2002 WL 220340, at *2 (Va. Cir. Ct. Feb. 12, 2002) ("[I]f the contract binds the indemnitor to do a certain act or to pay certain sums of money and

performance of the act or payment of the sum will prevent harm or injury to, or liability upon, the indemnitee, the contract is one of the indemnity against liability.") (internal quotation and citation omitted) (finding contract, wherein defendant agreed to "assume" a lease and pay all "expenses and losses," involved indemnification from liability because such obligations "constitute[d] commitments 'to pay a debt, or do some other particular act or thing'").[2]  Indeed, there is nothing in the contract language suggesting that Plaintiff's right to indemnity only arises when Plaintiff has suffered a loss in conjunction with Defendant's default on an account payable.  Rather, Defendant's assumption of all accounts payable and agreement to pay such accounts as they become due suggests that Plaintiff's right to indemnity is triggered upon Defendant's default of any such required payment.  This further suggests that the contract involves indemnity against liability.  *See Black's Law Dictionary* (8th ed. 2004) (defining "indemnity against liability" as "a right to indemnity that arises on the indemnitor's default, regardless of whether the indemnitee has suffered a loss").

Plaintiff's cause of action therefore accrued when the debt in question became due.  *See Fireman's Fund Ins. Co. v. S.E.K. Const. Co.*, 436 F.2d 1345, 1350-51 (10th Cir. 1971) ("Indemnity against liability accrued when indemnitor-liability becomes fixed and ascertained or as soon as the debt becomes due."); *Cent. Nat'l Bank of Poteau v. McDaniel*, 734 P.2d 1314, 1316 (Okla. Civ. App. 1986) ("Indemnity against liability gives rise to a claim against indemnification on default, whereas indemnity against loss is litigable only after the indemnitee has satisfied the obligation.")  Plaintiff does not dispute that Networks XIX made demand upon him for the claim in question "as early as 2005," indicating that the amount owed to Networks XIX was due at that point in time.

---

[2] Because the parties did not cite, nor was the Court able to find, any Oklahoma cases clearly defining "indemnity against liability," the Court looked to cases from other jurisdictions for assistance.

9

(Pl.'s Resp. to Def.'s Mot. to Dismiss 6 n.2.)  The Court therefore rejects Plaintiff's argument the claim at issue had not accrued at the time 05-CV-289 was before this Court.  Rather, the Court finds that Plaintiff's claim accrued as early as 2005 and could have been included within the earlier lawsuit between the parties.  Thus, because the elements of claim preclusion are clearly met in this case – namely, (1) there is identity of subject matter and parties in this action and in 05-CV-289; (2) this Court is of competent jurisdiction and heard 05-CV-289; and (3) the judgment in 05-CV-289 was a judgment on the merits – the Court finds that Plaintiff is precluded from bringing the instant action.

## V.     Conclusion

For the reasons outlined above, Defendant's Motion to Dismiss Based on Claim Preclusion (Doc. 7) is GRANTED.  A judgment of dismissal will be separately entered.

**ORDERED this 13th day of September, 2010.**

_____
**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**